**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DANIEL AND BARBARA RYAN,** individually and on behalf of similarly situated persons | **CIVIL ACTION NO. 19-cv-1811** |
| *Plaintiffs* | **SECTION E, DIVISION 5** |
| **VERSUS** | |
| **NATIONAL FOOTBALL LEAGUE, INC, ROGER GOODELL, WILLIAM VINOVICH,III, PATRICK TURNER, GARY CAVALETTO, AND ALBERTO RIVERON** | **JUDGE SUSIE MORGAN** |
| | **MAGISTRATE JUDGE DANA DOUGLAS** |
| *Defendants* | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

NOW INTO COURT, through undersigned counsel, comes the Plaintiffs, DANIEL and BARBARA RYAN, individually and on behalf of similarly situated persons, who, for those reasons asserted herein, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss for failure to state a claim.

**A. INTRODUCTION**

1. Plaintiffs are DANIEL and BARBARA RYAN, individually and on behalf of similarly situated persons. The Plaintiffs purchased tickets and attended the National Football Conference Championship at the Mercedes Benz Superdome on January 21, 2019 (hereinafter "the game") that is the subject of these proceedings.

2. The Defendants are: (1) the NATIONAL FOOTBALL LEAGUE, INC. ("NFL"). NFL is a trade association made up of and financed by its 32 team members that promote, regulate

1

and coordinate American professional football competitions for its fans; (2) ROGER GOODELL who serves as the Commissioner of the NFL whose primary responsibility is to protect the integrity of the NFL, including "the game" (3) WILLIAM VINOVICH III who was the referee and a member of the officiating crew that was officiating "the game"; (4) PATRICK TAYLOR who was a down judge and a member of the officiating crew officiating "the game"; (5) GARY CAVALETTO who was the side judge and a member of the officiating crew officiating "the game"; and (6) ALBERT RIVERON who was the Senior Vice President of Officiating, who is in charge of the officials and oversaw "the game" from the NFL headquarters in New York.

3.      Defendants filed a motion dismiss for failure to state a claim upon which relief could be granted. [Doc. 18].

4.      Plaintiffs file this response in support of their request for this Honorable Court to deny the Defendants' motion.

5.      The Plaintiffs' claims arise from representations made by the Defendants with regard to its product, including "the game" and the quality of the officials and officiating, the wholesale abandonment of its rules, the role of the Defendants' failure to take measures to correct any extraordinary act that results in unjust inequitable result that calls into question the integrity of the game. The wholesale abandonment by the Defendants of its rules and promises to the Plaintiffs of the Defendants gave rise to the "perfect storm" on January 21, 2019 at the Mercedes Benz Superdome between the New Orleans Saints and the Los Angeles Rams.

6.      In Plaintiffs' complaint, the plaintiffs allege claims for: (a) **DETRIMENTAL**

2

**RELIANCE** [Doc. 9 paragraphs 33-34]; **(b) NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION** [Doc. 9 - Paragraphs 7-69]; **(c) BREACH OF FIDUCIARY DUTY** [Doc. 9 paragraphs 7-74]; and **(d) UNJUST ENRICHMENT** [Doc. 9 paragraphs 1-79].

### B. STANDARD OF REVIEW

7.    Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for failure to state a claim upon which relief can be granted.

8.    A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.[1]

9.    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.[2]

10.    A claim is facially plausible when the plaintiff has pleaded facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.[3]

11.    On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[4]

12.    If the complaint provides fair notice of the claim and the factual allegations are sufficient

---

[1]*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982)

[2]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008).

[3]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008).

[4]*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)

to show the right to relief is plausible, a court should deny the defendant's motion.[5]

## C. LAW AND ARGUMENT

13.     The Defendants contend that ticketholders do not have any legally cognizable right to assert the types of claims that Plaintiffs assert here citing *Mancina v. Goodell*, 2013 WL 393041 (E.D. La. 1/30/2013) and *Mayer v. Belichick*, 605 F.3d 223, 236-37 (3d Cir. 2010) as authority for same.

14.     This case is NOT about the subjective expectations of a ticketholder or the subjective elements of officiating. This case is about the disregard for uncontroverted facts, objective expectations and a disregard for procedures to correct a patently unfair outcome. There is a basic OBJECTIVE expectation of all who attend a competition that is promoted as a fair competition and that expectation is that the event will be officiated fairly within the rules represented and promulgated by the league which oversees the game. Gayle Benson, an NFL owner, stated that this is a basic expectation of all fans. Basic = reasonable. Representations made by the NFL and its employees that games are not "rigged" and that the games will be officiated fairly create reasonable objective expectations for fans for which the NFL should be held accountable.

15.     Is it reasonable that when a Saints player scores a touchdown that the team is awarded six points per the rules of the game? Yes, this is an objective reasonable expectation. What if the official decided he would not award the Saints team six points? He refused to award

---

[5] *Brooks v. Ross*, 578 F.3d 574,581 (7th Cir. 2009); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); and *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)

the Saints team six points, not because of any rule but simply because he chose to disregard the rules. What if the league had the power to intervene but did not intervene to correct the fraud? Would this not offend the reasonable objective expectation of the ticketholder? Would he be without recourse? What if you purchased a ticket to a music concert and the musician played one song and left? Is there a reasonable objective expectation that presents a cognizable claim for the ticketholder? Of course there is because the law is just and equitable and allows for each case to stand on its own merits.

16.  The law provides recourse against "Snake Oil" salesmen in the form of detrimental reliance, negligent and/or intentional misrepresentation, breach of fiduciary duty and unjust enrichment. If not then the law allows, fosters and encourages fraud upon consumers without recourse.

17.  The Defendants' baseless suggestions that there are no facts, no circumstances and no manner in which the Plaintiffs would ever have standing to assert a claim against the NFL offends all sense of justice, equity and fairness. This reasoning, the belief in same, the support and affirmation of same allows for the rules of the game to be disregarded, collusion amongst officials, cheating, fraud, dishonesty, theft, etc. To simply dismiss and disregard the facts of this case as more of the same regarding "ticketholder claims" is blind to the ideal of justice

18.  The Defendants motion instances the Defendants attempting to force the proverbial square peg into a round hole, to wit…the empirical suggestion that every suit against the NFL is nothing more or less than dissatisfaction "with officiating in, administration of, or outcome of sporting events." In other words, the Defendants are essentially suggesting that there are

no facts available in the entire universe that would provide for a viable legal cause of action; that because cases before based on different facts and different legal theories failed all cases must, likewise, meet the same fate; that the only consideration is simply whether the claimants were ticketholders; and, no matter the nature and degree of inducement and reliance thereon, the Court's analysis is hamstrung to only the cookie cutter approach advocated by the Defendants.

19. Thus even though Louisiana law on detrimental reliance does not require proof of a formal, valid and enforceable contract and even though the focus of analysis of a **detrimental reliance claim** is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promise to rely on it to his detriment. The Defendants baselessly suggest Louisiana substantive law does not apply.[6]

20. Thus, even though the Plaintiffs also asserted a tort theory cause of action for **negligent and/or intentional misrepresentation** which Louisiana law merely requires "a legal duty of the defendant's part to supply correct information to the plaintiff, a breach of that duty and damages to the plaintiff as a result of his justifiable reliance upon the misrepresentation.[7] An action properly characterized as being based upon "negligent representation" is thus more akin to one based upon detrimental reliance.[8] Indeed, even

---

[6] *Suire v. Lafayette City Parish Consolidated Government*, 907 So.2d 37 (La 2005); *Allbritton v. Lincoln Health System, Inc.*, 51 So. 3d 91 (La App. 2nd Cir. 2010); *Benton v. Clay*, 123 So.3d 212 (La. App. 2nd Cir. 2013.

[7] *Busby v. Parish Nat'l Bank*, 464 So.2d 374, 377 (La. App. 1st Cir.) writ denied, 467 So.2d 1132 (La. 1985).

[8] *Cook v. American Gateway Bank*, 49 So.3d 23 (La. App. 1st Cir. 2010).

though negligent misrepresentation includes representations made in the course of rendering service pursuant to a contract, when made with an honest belief in its truth, but because of lack of reasonable care or an absence of skill or competence in ascertaining the facts or making the opinion, and/or the manner of communicating the facts or opinion, the representations causes economic loss to be suffered by a third party, who is an intended user of the information and who relies on the information to his detriment and is distinguished from actions for intentional fraud, deceit, and warranty actions where the plaintiff has suffered physical harm.[9] The Defendants' baselessly suggest Louisiana substantive law does not apply and the Court's analysis is hamstrung to only the cookie cutter analysis advocated by the Defendants.

21.  Likewise, the Plaintiffs plead and Louisiana substantive law provides causes of action for breach of fiduciary duty. The elements of a cause of action for a breach of fiduciary duty, or a knowing participation in such, are: (1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach.[10] The complaint sets forth the specific facts that give rise to the relationship between the NFL and its fans/customers, including the plaintiffs that is defined by the NFL, including Roger Goodell. ROGER GOODELL has proclaimed that the league and its employees **owe a duty to the fans** to preserve, protect and defend the integrity of the game. The integrity of the game that

---

[9] *Kent v. Cobb*, 811 So.2d 1206 (La. App. 2 Cir. 2002)
[10]*Brockman v. Salt Lake Farm P'ship*, 768 So.2d 836, 844 33,938 (La. App. 2 Cir. 2000), writ denied, 777 So.2d 1234 (La. 12/15/00),

includes that the rules of the officiating would be consistent and fair to all competitors; such that the integrity of the game is protected and such that the rules apply to everybody in accordance with the promised values and standards and that **appropriate action will be taken so that the NFL will not allow an occurrence that is so unfair that the result of the game in questions would be inequitable to one of the participating teams**. For all of the reasons stated in the Plaintiffs' Original Complaint, the Defendants failed miserably to honor its duty and breached the fiduciary duty owed to the Plaintiffs. [Doc. 9 paragraphs 7-74]. The Defendants Motion to Dismiss for failure to state a claim is without merit and should be denied.

22.    The Defendants' reliance upon *Mancina* and *Mayer* as dispositive of the subject suit ignores the specific facts and circumstances giving rise to the subject suit, the suit itself and the application of Louisiana substantive law. In *Mancina*, *supra*, the Plaintiffs filed suit as ticketholders based upon the defendants sanctions imposed upon the New Orleans Saints related to "bounty gate" and that said sanctions imposed without due process diminished the value of their tickets and caused them emotional damages. The Plaintiffs asserted claims pursuant to *Louisiana Unfair Trade Practices Act,* breach of contract, civil fraud and tortious interference with contract. The Court focused on the contractual language and rights associated with the terms and conditions set forth in the Plaintiff's ticket and dismissed Plaintiffs claims finding that a ticket is a "license" and that the language contained on the ticket simply granted access to the venue and a seat. The Court found that the only issue is whether the ticket provides any of the "rights" upon which the plaintiff has sued. The Court in *Mancina* adopted the reasoning of the Court in *Mayer*,

supra.

23.     In *Mayer*, supra, a New York Jets season ticketholder brought suit against the Coach of the Patriots, Bill Belichick, the New England Patriots and the NFL alleging tortious interference with contract, common law fraud, deceptive business practices, state and federal racketeering statutes, violations of New Jersey Consumer Fraud Act, breach of contract, quasi contract and contractual rights as third party beneficiaries. The causes of action due based upon the Patriots surreptitiously videotaping the New York Jets coaches and players during practice in an attempt to capture and steal New York Jets signals. The Plaintiffs claim that the activity violated the contractual expectations and the rights of the New York Jets ticketholders who fully anticipated a contracted for a ticket to observe an honest match played in compliance with all laws, regulations and NFL rules. The Court dismissed the Plaintiffs' complaint stating that a failure to satisfy the subjective expectations of spectators at a sporting event is not actionable under law.

24.     Unlike *Mancina* and/or *Mayer*, the Plaintiffs claims are not based upon a strict breach of contract cause of action because of their status as ticketholders and are not based upon their subjective expectations as spectators at a sporting event. Rather, the Plaintiffs claims are based upon their reliance upon the many representations made by the Defendants. Further, the promises relied upon by the Plaintiffs were specifically set forth by the defendants in express representations made to the public, including the Plaintiffs, in the media, on the internet, on the NFL website, in the NFL rulebooks and NFL handbooks, in print, on television and social media. The representations, as set forth and referenced in Plaintiffs Original Complaint [Doc. 9] were made repeatedly and for the sole purpose of inducing

the public to watch the game on television, listen on the radio or internet and for the public, including the Plaintiffs, to purchase tickets.

25.     In the complaint, Plaintiffs alleged a claim for **DETRIMENTAL RELIANCE**. "A party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."[11] The complaint provides defendant with fair notice of the claim of detrimental reliance as it sets forth the factual basis that supports each element of the claim. [Doc. 9 paragraphs 5-59].

26.     **REPRESENTATION**. Roger Goodell, acting Commissioner of the NFL, has repeatedly made representations to the general public, including the Plaintiffs,, that   the integrity of the game is paramount; the rules and officiating will be fair to all competitors; that pass interference calls and head to head contact will be strictly enforced during the 2018 season, to include "the game" and that the Commissioner, as 'guardian" of the NFL shield would take those measures necessary to preserve the integrity of the game. The Defendants represented that the rules would be vigorously enforced and where an extraordinary or unfair occurrence took place where the result of the game in question would be inequitable to one of the participating teams that those in charge of preserving the integrity of the game would reverse the game's result or reschedule the game, either from the beginning or from the point at which the extraordinary act occurred.   [Doc. 9 paragraphs 35-39; 56].

27.     The representations made by the Defendants were not contemplated by the Court's in

---

[11]*Suire v. Lafayette City-Par. Consol. Gov't*, 907 So.2d 37, 59 (La. 2005),

*Mancina* or *Mayer*. The representations made by the NFL specifically address the facts and circumstances surrounding "the game" that gave rise to this suit. Specifically, the NFL represented to the public, the fans and the Plaintiffs that rule changes and points of emphasis for the 2018 season, including "the game" was to be placed on player protection. The NFL introduced the new Use of Helmet rule that provides that "it is a foul if a player lowers his head to initiate and make contact with his helmet against an opponent. This rule pertains to all players on the field, and to all areas of the field".[12] The NFL represented to the Plaintiffs that the NFL would **strictly enforce illegal contact and offensive and defensive pass interference**. The NFL represented to its customers, including the Plaintiffs that helmet to helmet calls are NOT discretionary and are to be strictly enforced.

28.    The NFL represented to the consumer world, including the Plaintiffs, that "It's imperative that the games are decided on the field, between the two teams."[13] Roger Goodell, acting as Commissioner of the National Football League, has repeatedly represented to fans that the game's integrity is paramount and that he is responsible. Roger Goodell has stated publicly on ESPN that "...when it comes to the integrity of the game, that is the commissioner's responsibilities and has been since the day the NFL was formed."[14] GOODELL has publicly stated that "The integrity of the game is the most important thing.

---

[12] https://operations.nfl.com/the-rules/2018-rules-changes-and-points-of-emphasis/

[13] [Doc. 9 - Exhibit 3] - The NFL Football Operations Manual - "Deciding Games on the Field" https://operations.nfl.com/football-ops/league-governance/

[14] [Doc. 9 - Exhibit 4] http://www.espn.com/nfl/story/_/id/15426767/nfl-commissioner-roger-goodell-defends-power-citing-integrity-game

The integrity of the game is something we will always protect. The rules apply to everybody. That is my job in particular, to make sure everyone from our players to our coach, to our fans and our partners, that they all recognize we're going to play by these sets of rules, and that's part of our values and standards."[15]

29.     The NFL represented and provided that the Commissioner is solely empowered and authorized to take those measures necessary to preserve the integrity of the game. *NFL Operations Manual Rule 17 Section 2 - Extraordinarily Unfair Acts*[16] states as follows:

**ARTICLE 1.   COMMISSIONER AUTHORITY**. The Commissioner has the sole authority to investigate and take appropriate disciplinary and/or corrective measures if any club action, non-participant interference, or calamity occurs in an NFL game which the Commissioner deems so extraordinarily unfair or outside the accepted tactics encountered in professional football that such action has a major effect on the result of the game.

**ARTICLE 2.   NO CLUB PROTESTS**. The authority and measures provided for in this entire Section 2 do not constitute a protest machinery for NFL clubs to avail themselves of in the event a dispute arises over the result of a game. **The investigation called for in this Section 2 will be conducted solely on the Commissioner's initiative to review an act or occurrence that the Commissioner deems so extraordinary or unfair that the result of the game in question would be inequitable to one of the participating teams.** The Commissioner will not apply authority in cases of complaints by clubs concerning judgmental errors or routine errors of omission by game officials. Games involving such complaints will continue to stand as completed.

**ARTICLE 3.   PENALTIES FOR UNFAIR ACTS**. The Commissioner's powers under this Section 2 include the imposition of monetary fines and draft-choice forfeitures, suspension of persons involved in unfair acts, and, **if appropriate, the reversal of a game's result or the rescheduling of a game, either from the beginning or from the point at which the extraordinary act occurred. In the event of rescheduling a game**, the Commissioner will be guided by the procedures specified in 17-1-5–11, above. **In all cases, the Commissioner will conduct a full investigation, including the opportunity**

---

[15]  [Doc. 9 – Exhibit 5]
http://www.nfl.com/news/story/0ap3000000507859/article/goodell-integrity-of-game-is-most-important-thing

[16]  [Doc. 9 - Exhibit 1]

**for hearings, use of game video, and any other procedure the Commissioner deems appropriate.**   (Emphasis added)

30.    The facts and circumstances presented in this suit reside outside the norm and are a far cry from the typical "blown call" referred to by many expert commentators as the "worst" in the history of the NFL and essentially created the "perfect storm" that gives rise to the Plaintiffs causes of action. Specifically, the tortious conduct occurred with approximately one minute and forty five seconds left in the game; there were multiple fouls committed on the subject play that were open and obvious and uncontradicted by the participants, the NFL and all who were present and/or viewed the game; the fouls occurred with the Rams only having one timeout; had the fouls been enforced per the league rules and representations the Saints would have prevailed; the failure to call the fouls committed on the subject play were so extraordinary and unfair that the result of the game in question is grossly inequitable to the Saints; and all of the Defendants had an opportunity to act at the time the fouls were committed and/or immediately thereafter to prevent the fraudulent result that occurred much to the disbelief of an entire country, including the Plaintiffs, but did not avail itself of this relief. Thus, contrary to the Defendants baseless suggestion that allowing the Plaintiffs' suit to proceed will open the door to litigation by every sporting event patron dissatisfied with the officiating in, administration of, or outcome of sporting events such is not the case wherein this suit is limited to its facts.

31.    **RELIANCE**. The Plaintiffs are consumers of the NFL and their products. The Plaintiffs purchased tickets to "the game". The fact that the Plaintiffs purchased tickets to "the game" does not define or limit their causes of action to those of spectators. Rather, the purchase of the ticket is simply the measuring stick of damages for those Plaintiffs that relied upon

the representations made by the Defendants with respect to how "the game" would be officiated and those efforts that would be made by the Commissioner to ensure that the integrity of the game was preserved by all measures.

32.     The Plaintiffs reliance is just and reasonable and this Honorable Court need look no further than the words of ROGER GOODELL and Saints Owner that the **duty** to protect the integrity of the game is paramount and the integrity of the game includes that the rules apply to everybody and that **fairness** and **integrity** are **a fan's most basic expectations**. Further, the rule book promulgated by the NFL provides authority for the Commissioner to act when something occurs that calls into question the fairness and integrity of the game. [Doc. 9 paragraphs 40-45]**.**

33.     **DETRIMENT.** While the law may not provide a ticket holder standing to assert a cause of action based upon the outcome of an event; Louisiana law does, in fact, provide recourse to a party who has relied upon the representations of another to his detriment. The Plaintiffs paid several hundred dollars to attend "the game". [Doc. 9 paragraphs 46-47]. Further, the Defendants failure to make a call on an unobstructed play that included **multiple fouls** in the last two minutes of the NFC Championship game and to allow the game to proceed without intervention by the officials and Commissioner who were monitoring the game was to the detriment of every fan, including the Plaintiffs, that eviscerated any claim of integrity made by the NFL and/or Commissioner Goodell.

34.     In the Complaint, the Plaintiff also alleges **NEGLIGENT MISREPRESENTATION**. Plaintiffs claim that Defendants are liable for breach of *Louisiana Civil Code Article 2315(A)*, which provides: "Every act whatever of man that causes damage to another

obliges him by whose fault it happened to repair it." Under Louisiana law, a negligent misrepresentation claim is made out when a person, in the course of his business or other matters in which he has a pecuniary interest, supplies false information without exercising reasonable care, for the guidance of others, who justifiably and detrimentally rely on such information and thereby suffer a pecuniary loss. "A person commits the tort of negligent misrepresentation when (1) he has a legal duty to supply correct information; (2) he breaches that duty; and, (3) his breach causes damages to the plaintiff."[17] The complaint provides defendant with fair notice of the claim of detrimental reliance as it sets forth the factual basis that supports each element of the claim and thus the Defendants Motion to Dismiss based upon failure to state a claim is without merit. [Doc. 9 paragraphs 5-59].

35.     The NFL marketed its product that the officials that are employed to officiate the NFL games, including "the game" are part of the superior product the offer and are carefully selected, extensively prepared and rigorously evaluated to ensure that they call games correctly and consistently. The NFL represents that the players, coaches and fans expect and deserve outstanding officiating. [Doc. 9 paragraph 11]. The NFL further marketed, peddled, promised, groveled, and "shouted from the mountaintops" that the "integrity of the game" was to be preserved at all costs. For those reasons set forth in the Plaintiffs Original Complaint, the Defendants knowingly misrepresented its product and services to the Plaintiffs to their detriment. [Doc. 9 - Paragraphs 5-69].

36.     In the Complaint, the Plaintiff alleges **BREACH OF FIDUCIARY DUTY**. The elements

---

[17]*Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F.Supp. 2d 784, 800 (E.D. La. 2013)

of a cause of action for a breach of fiduciary duty, or a knowing participation in such, are: (1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach.[18] The complaint provides defendant with fair notice of the claim of detrimental reliance as it sets forth the factual basis that supports each element of the claim.

37.   The relationship between the NFL, its employees, including the Defendants, and the fans of the game, including the Plaintiffs is one in which the league owes a fiduciary duty to its fans. ROGER GOODELL has admitted as much on several occasions where he has proclaimed that the league and its employees owe a duty to the fans to preserve, protect and defend the integrity of the game. The integrity of the game that includes that the rules of the officiating would be consistent and fair to all competitors; such that the integrity of the game is protected and such that the rules apply to everybody in accordance with the promised values and standards and that appropriate action will be taken so that the NFL will not allow an occurrence that is so unfair that the result of the game in questions would be inequitable to one of the participating teams. For all of the reasons stated in the Plaintiffs' Original Complaint, the Defendants failed miserably to honor its duty and breached the fiduciary duty owed to the Plaintiffs. [Doc. 9 paragraphs 7-74]. The Defendants Motion to Dismiss for failure to state a claim is without merit and should be denied.

38.   In the Complaint, the Plaintiff alleges **UNJUST ENRICHMENT** as an alternative cause

---

[18]*Brockman v. Salt Lake Farm P'ship*, 768 So.2d 836, 844 33,938 (La. App. 2 Cir. 2000), writ denied, 777 So.2d 1234 (La. 12/15/00),

of action. A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule. *La. Civ. Code Ann. art. 2298*.

39.    The elements of an unjust enrichment claim are: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available plaintiff. Plaintiffs plead unjust enrichment in the alternative to the extent and in the event this Honorable Court would find that there is no other remedy at law available to the Plaintiffs. The complaint provides defendant with fair notice of the claim of detrimental reliance as it sets forth the factual basis that supports each element of the claim. {Doc. 9 paragraphs 5-81}.

### D. CONCLUSION

40.    The facts giving rise to this suit are truly unique. Unlike *Mancina* and *Mayer*, the Plaintiffs claims asserted in the subject lawsuit arise from the explicit representations made by the Defendants and the unique facts that called for the application of the objective rules and procedures available to the Defendants which they failed to apply to the detriment of the Plaintiffs.

41.    This is not simply a case of a fan's subjective expectations not being met. This is a case where the Defendants representations created objective expectations for the Plaintiffs who reasonable relied upon their representations to their detriment.

17

42.     The Plaintiffs have asserted factual allegations for each and every element of the causes of action asserted in the Complaint. [Doc. 9 paragraphs 5-81]. Strict adherence to the requirements of a Rule 12(b)(6) dismissal require that the Defendants' Motion to Dismiss be denied.

43.     These factual allegations show a right to relief that is plausible. That is, when the factual allegations are assumed to be true, they show a right to relief that is more than mere speculation.

44.     The complaint provides fair notice of the claim and the factual allegations are sufficient to show the right to relief is plausible, thus this Honorable Court should deny the defendants' motion.[19]

45.     For those reasons set forth herein, the Defendants' Motion to Dismiss for failure to state a claim should be dismissed.

46.     Pursuant to Local Rule 78.1, the Plaintiffs respectfully request oral argument.

---

[19] *Brooks v. Ross*, 578 F.3d 574,581 (7th Cir. 2009); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); and *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L.Ed.2d 1 (2002)

Respectfully submitted by:

/s/ Kevin R. Duck
Kevin R. Duck (23043)
Duck Law Firm, L.L.C.
5040 Ambassador Caffery Parkway, Ste. 200
Lafayette, Louisiana 70508
Tele: (337) 406-1144
Fax: (337) 406-1050
Attorney for the Plaintiffs


/s/ Clé Simon
Clé Simon (19996)
Simon Law Offices
122 Representative Row
Lafayette, Louisiana 70508
Tele: (337) 232-2000
Fax: (337) 234-9274
Attorney for the Plaintiffs


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss has been electronically served upon all counsel of record through the ECF system on this 8th day of April, 2019.

*/s/ Kevin R. Duck*
KEVIN R. DUCK