## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL RYAN, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| | |
| **VERSUS** | **NO. 19-1811** |
| | |
| **NATIONAL FOOTBALL** | **SECTION "E" (3)** |
| **LEAGUE, INC, ET AL.,** | |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss filed by Defendants the National Football League ("NFL"), Roger Goodell, William Vinovich, III, Patrick Turner, Gary Cavaletto, and Alberto Riveron.[1] Plaintiffs Daniel and Barbara Ryan oppose the motion.[2] Defendants filed a reply.[3] For the following reasons, the motion is **GRANTED**.

## BACKGROUND

### I.    Factual Background

This case arises out of the events in the final two minutes of the National Football Conference ("NFC") championship game between the New Orleans Saints and the Los Angeles Rams, held in New Orleans, Louisiana on January 20, 2019.[4] Plaintiffs allege that Los Angeles Rams cornerback, Nickell Robey-Coleman, made improper helmet-to-helmet contact with New Orleans Saints wide receiver, Tommylee Lewis, and improperly interfered with his ability to catch a pass.[5] Plaintiffs allege, and it is undisputed, that the

---

[1] R. Doc. 18.
[2] R. Doc. 21.
[3] R. Doc. 29.
[4] R. Doc. 1 at ¶ 7.
[5] *Id.* at ¶¶ 20-23.

officials at the game did not call either a pass-interference or a helmet-to-helmet contact penalty.[6]

On February 27, 2019, Plaintiffs filed suit against Defendants the NFL; Roger Goodell, the commissioner of the NFL; William Vinovich, III, the referee for the game; Patrick Turner, the down judge for the game; Gary Cavaletto, the side judge for the game; and Alberto Riveron, the senior vice president of officiating for the NFL.[7] Plaintiffs bring causes of action for detrimental reliance,[8] negligent and/or intentional misrepresentation,[9] breach of fiduciary duties,[10] unjust enrichment,[11] and conspiracy to commit those causes of action.[12] Plaintiffs' claims are brought individually, and on behalf of similarly situated persons who purchased tickets and attended the NFC Championship game on January 21, 2019,[13] seeking damages including the cost of the ticket to attend the game, the cost of parking for the game, the cost to travel to the game, and the cost of concessions and merchandise purchased at the game.[14] On April 2, 2019, Defendants filed the instant motion to dismiss Plaintiffs' claims under Rule 12(b)(6).[15]

## II.    Constitutional Versus Statutory Standing

Despite the fact that the instant motion to dismiss is filed under Rule 12(b)(6), Defendants express their argument in terms of the Plaintiffs' lack of a "legally cognizable right" to assert their claims and rely on similar cases against the NFL doing the same.[16]

---

[6] *Id.* at ¶ 28.
[7] *Id.* at ¶ 1B-G.
[8] *Id.* at ¶¶ 33-59.
[9] *Id.* at ¶¶ 60-69.
[10] *Id.* at ¶¶ 70-74.
[11] *Id.* at ¶¶ 75-79.
[12] *Id.* at ¶¶ 80-81.
[13] *Id.* at ¶ 1A.
[14] *Id.* at ¶¶ 59, 69, 74, 79.
[15] R. Doc. 18.
[16] *See Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010); *Mancina v. Goodell*, No. 12-2512, 2013 WL 393041 (E.D. La. Jan. 30, 2013); *Mayer v. Belichick*, No. 07-4671, 2009 WL 792088 (D.N.J. Mar. 23, 2009).

The Defendants argue, "ticket holding spectators do not have *standing* to recover any alleged damages for any of these alleged wrongdoings,"[17] because Plaintiffs "have no legally cognizable right to the damages they seek, and therefore lack standing."[18] Because they argue the Plaintiffs have no "legally cognizable right," the Defendants conflate the issue of constitutional standing, more appropriately addressed in a motion under Rule 12(b)(1), with statutory standing, also called prudential standing, which is more appropriately addressed in a motion under Rule 12(b)(6).

Constitutional standing stems from Article III, which gives federal courts authority to hear cases and controversies. If a plaintiff lacks constitutional standing, the court lacks jurisdiction.[19] Constitutional standing "address[es] the question of whether a federal court may grant relief to *any* plaintiff given the claim asserted."[20] The "irreducible constitutional minimum of standing" contains three elements: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.[21] The Supreme Court has explained the injury in fact test requires a showing of "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[22] By arguing the Plaintiffs have no legally cognizable right to the damages they seek, the Defendants, in effect, argue the Plaintiffs suffered no

---

[17] R. Doc. 18-1 at 2-3.
[18] R. Doc. 18 at 1.
[19] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citing *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011)); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).
[20] *Vitanza v. Bd. of Trade of City of N.Y.*, No. 00-7393, 2002 WL 424699, at *5 n.10 (S.D.N.Y. Mar. 18, 2002).
[21] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).
[22] *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Lujan*, 504 U.S. at 560; *see also Spokeo*, 136 S. Ct. at 1548.

3

injury in fact and, as a result, the Plaintiffs lack constitutional standing and this Court lacks jurisdiction.

 In contrast, statutory standing asks, "whether *this* plaintiff has a cause of action."[23] "The question of statutory standing is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case."[24] Statutory standing prohibits (1) generalized grievances, (2) the assertion of an interest outside the zone of interests protected by the law invoked, and (3) the assertion of the right of a third party.[25]

The conflation of the two concepts is notable because the cases on which the Defendants rely most heavily are *Mayer* and *Mancina*.[26] In reviewing the ruling on a motion to dismiss in *Mayer*, purportedly decided under Rule 12(b)(6), the Third Circuit uses the language of Rule 12(b)(1) and states the plaintiffs "failed to set forth a legally cognizable right, interest, or injury."[27] In *Mayer*, the Third Circuit identifies several causes of action brought by the plaintiff ticketholders but only substantively discusses their claim for breach of contract when granting the motion to dismiss under Rule 12(b)(6). The *Mayer* court does not perform a Rule 12(b)(6) analysis with respect to the elements of the *other* causes of action the plaintiffs asserted, which are more akin to the causes of action asserted in this case. The *Mayer* court ultimately bases its dismissal of those causes of action, other than breach of contract, on public policy considerations without ever conducting a true 12(b)(6) analysis to determine whether the pleadings state any claim for relief that is plausible on its face. In ruling on a motion to dismiss under

---

[23] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998).
[24] *Id.* at 97 n.2.
[25] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).
[26] *See Mayer*, 605 F.3d 223; *see Mancina*, 2013 WL 393041.
[27] *Mayer*, 605 F.3d at 230.

Rule 12(b)(6) in *Mancina*, the court identifies several causes of action but, similarly, analyzes only the plaintiff ticketholders' claims for breach of contract.[28] The *Mancina* court otherwise adopts the reasoning of *Mayer*.

This Court does not find either *Mayer* or *Mancina* to be thorough, well-reasoned, or persuasive. Both opinions analyze only the plaintiff ticketholders' causes of action for breach of contract under Rule 12(b)(6) and do not analyze the other claims asserted. In this case, the plaintiff ticketholders do not assert a cause of action for breach of contract and, instead, bring claims for detrimental reliance, negligent or intentional misrepresentation, breach of fiduciary duties, and unjust enrichment. As a result, this Court finds the reasoning of *Mancina* and *Mayer* not helpful in this case.

Because Defendants filed their motion under Rule 12(b)(6), the Court assumes the Defendants are arguing the Plaintiffs lack statutory standing, such that *these* Plaintiffs may not seek relief. The Court will analyze each of the Plaintiffs' causes of action under Rule 12(b)(6) for failure to state a claim.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[29] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[28] *Mancina*, 2013 WL 393041.
[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[32] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[33]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[34] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[35] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[36]

## LAW AND ANALYSIS

### I.    Count One: Detrimental Reliance

In count one, Plaintiffs allege the Defendants are liable to them under the theory of detrimental reliance. The theory of detrimental reliance is codified in Louisiana Civil Code article 1967:

> A party may be obligated by a *promise* when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the *promise*. Reliance on a gratuitous promise made without required formalities is not reasonable.[37]

---

[31] *Id.*

[32] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[33] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[34] *Twombly*, 550 U.S. at 555.

[35] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

[36] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).

[37] La. Civ. Code. art. 1967 (emphasis added).

6

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.[38] "The doctrine usually functions when no written contract or an unenforceable contract exists between the parties."[39] The elements of a detrimental reliance claim are that: (1) the defendant made a promise, (2) the promise was made in a manner that the promisor should have expected the promisee to rely on it, (3) the plaintiff's reliance on this represented promise was reasonable, and (4) the plaintiff's reliance caused a change in position to its detriment.[40]

The first element of a claim for detrimental reliance is that the defendant made a promise.[41] While Louisiana Civil Code article 1967 references a "promise," some courts describe the first element of a detrimental reliance claim in terms of it requiring a "representation."[42] The Fifth Circuit has clarified that, for detrimental reliance purposes, a representation must be a representation related to a promise or contract,[43] although the Plaintiff need not prove the existence of a formal, valid, and enforceable contract.[44] In the end, whether called a promise or a representation, the requirement is essentially the same.

A "promise" for purposes of detrimental reliance is defined as:

[A] *declaration* which binds the person who makes it, either in conscience or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing. Another definition of a promise is that it is *an*

[38] *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 59 (quoting *Babkow v. Morris Bart, P.L.C.*, 1998–0256 (La. App. 4 Cir. 12/16/98), 726 So.2d 423, 427).
[39] *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004).
[40] *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir.2007) (citing *Suire*, 907 So. 2d at 59); *Roxco Ltd. v. Harris Specialty Chem., Inc.*, 85 F. App'x 375, 378 (5th Cir. 2004); *Industrias Magromer Cueros y Pieles, S.A. v. Louisiana Bayou Furs, Inc.*, 293 F.3d 912, 921 (5th Cir. 2002).
[41] *In re Ark–La–Tex Timber Co.*, 482 F.3d at 334.
[42] *See, e.g.*; *Louisiana Office of Risk Mgmt. v. Richard*, 2013-0890 (La. 10/15/13), 125 So. 3d 398, 402.
[43] *Roxco Ltd. v. Harris Specialty Chem., Inc.*, 85 F. App'x 375, 378 (5th Cir. 2004).
[44] *Suire*, 907 So. 2d at 59.

*offer* which is definite and certain and which the promisor intends to be binding. A promise must be clear and unambiguous in order to be enforceable. The mere expression of an intention is not a promise.[45]

Plaintiffs do not allege any promise or representation was made by Defendants William Vinovich, III, Patrick Turner, Gary Cavaletto, and Alberto Riveron. The motion to dismiss Plaintiffs' claim for detrimental reliance is granted as to them.

With respect to Defendants NFL and Goodell, Plaintiffs allege NFL and Goodell promised:

> [T]hat[,] in the event of an extraordinary or unfair act or occurrence [such] that[,] pursuant to the NFL Operations Manual Handbook[46] (The "NFL bible" - Rule 17 Section 2 Article 3) the result of the game in question would be inequitable to one of the participating teams[,] that Goodell would use his vested authority to act and, if appropriate, reverse the game's result and/or rescheduling of the game, either from the beginning or from the point at which the extraordinary act occurred.[47]

This allegation is based on Rule 17 of the Official Playing Rules which gives the Commissioner the sole authority to determine whether an event is extraordinarily unfair and what action to take, if any. This is not a promise to act or not to act in a specified manner, except perhaps for the Commissioner to exercise his authority to decide. The Plaintiffs do not allege Goodell promised to reverse the game's result or reschedule the game.[48] This representation is not sufficient to constitute an actionable promise because it does not manifest an intention to act or not to act in a specified manner.[49]

---

[45] *Wooley v. Lucksinger*, 2006-1167 (La. App. 1 Cir. 5/4/2007), 961 So. 2d 1228, 1239 (quoting H. Johnson, 18 La. Civ. Law Treatise 2d, *Civil Jury Instructions*, § 19.08, p. 401 (2001)) (emphasis in original).

[46] Plaintiffs refer to this document as the "NFL Operations Manual Handbook." The title of the document is the Official Playing Rules of the National Football League.

[47] R. Doc. 1 at ¶ 47. *See also id.* at ¶ 56.

[48] With respect to Count One, detrimental reliance, the Plaintiffs allege the NFL made certain representations to ensure the rules and officiating are consistent and fair and to protect the integrity of the sport, but these representations do not manifest an intent to act or not act in a specified manner.

[49] *See Bensco One, LLC v. Volkswagen of Am., Inc.*, No. 06-1591, 2008 WL 907521, at *11 (E.D. La. Mar. 31, 2008) (finding assumptions based on representations do not rise to the level of a promise); *Koerner v. Vigilant Ins. Co.*, No. 16-13319, 2017 WL 4682295, at *13 (E.D. La. Oct. 18, 2017) ("a promise is '[t]he manifestation of an intention to act or refrain from acting in a specified manner' . . . In other words, a

The second element of a claim for detrimental reliance is that the promise was made in a manner that the promisor should have expected the promisee to rely on the promise.[50] The promise on which Plaintiffs allege they relied is based on Rule 17, Section 2 of the Official Playing Rules of the NFL.[51] The NFL is an unincorporated association made up of thirty-two member clubs.[52] The Constitution and Bylaws of the NFL, Article II, provides, "the League is organized to promote and foster the primary business of League members, each member being an owner of a professional football club located in the United States . . . [and] to do and perform such other functions as may be necessary to carry out the purpose and objects of the League."[53] Article XI of the Constitution and Bylaws provides, "[t]he playing rules of the League shall be those set out in the Official Playing Rules of the National Football League."[54] The stated purpose of the NFL is to promote the business interests of its members, and the Official Playing Rules are adopted by, and for the benefit of, the NFL members. Plaintiffs do not allege the NFL adopted or published the Official Playing Rules for their benefit, nor do the Plaintiffs allege the NFL adopted or published the Official Playing Rules in a manner in which they did or should have expected the Plaintiffs to rely on them. As a result, the Plaintiffs have not alleged facts to support an inference that the promise on which they allegedly relied was made in a manner such that the NFL and Goodell did, or should have, expected the Plaintiffs to

---

promise amounts to 'a person's *assurance* that the person will or will not do something.'"); *Starco Meats, Inc. v. Bryan Foods, Inc.*, 2003 WL 1522940 *5 (E.D. La. Mar. 21, 2003) (finding vague statements do not amount to the sufficient level of a promise that is required under the standard of detrimental reliance); *Allbritton v. Lincoln Health Sys., Inc.*, 45,537 (La. App. 2 Cir. 10/20/10), 51 So. 3d 91, 97 (granting motion to dismiss because reliance on promise to hire "substantially all active employees" at compensation levels "consistent with those being provided by [former employer]" was not reasonable).

[50] *In re Ark–La–Tex Timber Co.*, 482 F.3d at 334.

[51] R. Doc. 1-1.

[52] *See* R. Doc. 6 in case no. 19-566, *Badeaux v. Goodell* filed in the Eastern District of Louisiana (dated Jan. 27, 2019).

[53] Constitution & Bylaws of the National Football League, Article II.

[54] *Id.* at Article XI.

rely on it.

The third element of a claim for detrimental reliance is that the plaintiff's reliance on the promise was reasonable.[55] The Official Playing Rules were not adopted or published for the benefit of Plaintiffs, or intended for their use. Plaintiffs include only a conclusory allegation that they "have a justifiable [or reasonable] reliance on the representations."[56] To support the allegation that the Plaintiffs' reliance was reasonable, the Plaintiffs include only allegations regarding a statement issued by Saints owner Gayle Benson[57] and a letter written by Louisiana Governor John Bel Edwards to Commissioner Goodell[58] expressing disappointment with the events of the game. The letter and statement merely demonstrate that many people were disappointed in the outcome of the game; they do not support the Plaintiffs' threadbare allegation that their reliance on a promise contained in the Official Playing Rules of the National Football League was reasonable.

Reliance by Plaintiffs on Rule 17 is patently unreasonable. On its face, Rule 17 Section 2 of the Official Playing Rules of the NFL states:

> [t]he Commissioner *has the sole authority* to investigate and take appropriate disciplinary and/or corrective measures if any club action, non-participant interference, or calamity occurs in an NFL game *which the Commissioner deems* so extraordinarily unfair . . . that such action has a major effect on the result of the game.  The investigation called for in this Section 2 will be conducted *solely on the Commissioner's initiative* . . . In all cases, the Commissioner will conduct a full investigation, including . . . any other procedure *the Commissioner deems* appropriate."[59]

Rule 17 grants the Commissioner complete and sole discretion to investigate any events

---

[55] *In re Ark–La–Tex Timber Co.*, 482 F.3d at 334.
[56] R. Doc. 1 at ¶ 40.
[57] *Id.* at ¶ 41; R. Doc. 1-7.
[58] R. Doc. 1 at ¶¶ 42-43; R. Doc. 1-8.
[59] R. Doc. 1-1 at 73 (emphasis added).

and determine what action is to be taken under Rule 17. To be reasonable, "[t]he representation on which [the] plaintiff relies must not be vague[,] and plaintiff's reliance cannot simply be based on assumption."[60] Any reliance by the Plaintiffs on the assumption that, given the circumstances that occurred in New Orleans on January 20, 2019, the Commissioner would choose to exercise his complete and sole discretion to require the teams to replay all or a portion of the game is not reasonable.

Claims of detrimental reliance are not favored under Louisiana law; such claims must be examined carefully and strictly.[61] It is difficult to recover under the theory of detrimental reliance because estoppel is not favored in Louisiana.[62] "Detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence."[63]

The factual allegations contained in the Complaint do not state a claim against the NFL or Goodell for detrimental reliance that is plausible on its face. Even accepting all factual allegations as true, Plaintiffs fail to allege facts to support an inference that the alleged promise was made in a manner such that the NFL and Goodell should have expected the Plaintiffs to rely on it. Nor have the Plaintiffs alleged facts to support an inference that they justifiably or reasonably relied on the promise. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for detrimental reliance is granted as to Defendants NFL and Goodell. An injustice did occur in the NFC Championship game, but not as a result of any promises or representations made by the NFL or Goodell to the Plaintiffs.

---

[60] *Bernard v. Scott Litig. Grp.*, No. 16-1314, 2017 WL 819036, at *4 (E.D. La. Mar. 2, 2017); *Active Mortg., LLC v. Trans Union, LLC*, 2010 WL 4627730, at *4 (M.D. La. Nov. 4, 2010).
[61] *In re Ark–La–Tex Timber Co.*, 482 F.3d at 334; *Richard*, 125 So. 3d at 402.
[62] *Richard*, 125 So. 3d at 402.
[63] *Starco Meats, Inc.*, 2003 WL 1522940 at *5.

## II.      Count Two: Negligent and/or Intentional Misrepresentation

In count two, Plaintiffs allege the Defendants are liable to them for negligent or intentional misrepresentation.[64] Plaintiffs allege no facts supporting negligent or intentional misrepresentation by Defendants Vinovich, Turner, and Cavaletto. Instead, Plaintiffs allege merely that these three Defendants "were negligent in their duties *resulting in* the NFL, GOODELL and RIVERON's negligent misrepresentations and/or intentional misrepresentations to the Plaintiffs [.]"[65] Accordingly, the motion to dismiss count two as to Defendants Vinovich, Turner, and Cavaletto is granted.

The Court now addresses the motion to dismiss count two as to the remaining Defendants, NFL, Goodell, and Riveron. Plaintiffs claim both intentional misrepresentation and negligent misrepresentation by these Defendants. The elements of a claim for intentional misrepresentation in Louisiana are: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury."[66] Plaintiffs do not allege Defendants had an intent to deceive Plaintiffs. Accordingly, the motion to dismiss Plaintiffs' intentional misrepresentation claim against Defendants is granted.

Turning to Plaintiffs' negligent misrepresentation claim, negligent misrepresentation originated as a common law tort, and historically Louisiana jurisprudence limited the application of negligent misrepresentation to cases in which a contractual or fiduciary relationship exists between the parties.[67] Plaintiffs do not allege breach of contract, and the Court has determined that no fiduciary duty exists between

---

[64] R. Doc. 1 at ¶ 68.
[65] *Id.* (emphasis added).
[66] *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).
[67] *Daye v. Gen. Motors Corp.*, 97-1653 (La. 9/9/98), 720 So. 2d 654, 659 (collecting cases).

the parties.[68] More recently, Louisiana courts have integrated negligent misrepresentation into Louisiana's civilian duty-risk analysis for torts.[69]

The duty-risk analysis is "employed on a case by case basis."[70] Under the duty-risk analysis, a plaintiff in a negligent misrepresentation case must allege the following four elements: (1) the defendant, in the course of its business or other matters in which it had a pecuniary interest, supplied false information; (2) the defendant had a legal duty to supply correct information to the plaintiff; (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation; and (4) the plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the omission or affirmative misrepresentation."[71]

For Plaintiffs to prevail under a theory of negligent misrepresentation, "it must first be established that [Defendants] owed a legal duty to [Plaintiffs] to provide correct information."[72] Plaintiffs fail to allege facts showing Defendants had a legal duty to supply correct information to Plaintiffs. As stated above, Plaintiffs do not allege breach of contract, and the Court has decided that no fiduciary duty exists between the parties.[73] When there is no contractual or fiduciary relationship between the parties, the Louisiana Supreme Court has found the duty of care owed is compatible with the duty stated in the Restatement (Second) of Torts § 552.[74] Section 522 provides:

---

[68] *See infra* pp. 17-18.

[69] *Daye*, 720 So. 2d at 659 (citing *Barrie v. V.P, Exterminators, Inc.*, 93–0679 (La. 10/18/93), 625 So.2d 1007, 1011).

[70] *Id.*

[71] *VFS US LLC v. Vaczilla Trucking, LLC*, No. 15-2226, 2016 WL 3655908, at *2 (E.D. La. July 8, 2016) (citing *Blanchard v. Lee*, No. 13-220, 2013 WL 4049003, at *5 (E.D. La. Aug. 9, 2013)); *see also Daye*, 720 So. 2d at 659; *Barrie*, 625 So.2d at 1011.

[72] *Dousson v. South Central Bell*, 0358 (La. App. 4 Cir. 3/4/83), 429 So.2d 466, 468.

[73] *See infra* p. 17-18.

[74] *See Barrie*, 625 So.2d at 1016 ("Adopting one of the common law standards as the sole method for determining liability for [negligent misrepresentation] is not necessary."); *Anderson v. Heck*, 88-0782, 88-0783 (La. App. 1 Cir. 11/15/89) 554 So.2d 695, 705 ("Our courts have adopted the definition of negligent

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.[75]

The Restatement limits liability of the negligent supplier of information to cases in which the information is supplied in the context of a commercial transaction and to cases in which the supplier of the information "manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs."[76]

The rationale of the Restatement is reinforced by Louisiana case law. For example, in Louisiana a termite inspector owes a duty of reasonable care to supply accurate information to both the seller of the home and a prospective purchaser because "[t]ermite inspections are designed to protect both the buyer and the seller."[77] Similarly, a real estate agent or broker owes a duty of reasonable care to supply accurate information to the seller and purchaser.[78] Further, a bank owes a duty of reasonable care to supply accurate information to its customer when advising its customer on how to open a joint account

---

misrepresentation set forth in the Restatement (2nd) of Torts"); *Lifecare Hosps., Inc. v. B & W Quality Growers, Inc.,* 39,065 (La. App. 2 Cir. 10/27/04), 887 So. 2d 624, 632.
[75] Restatement (Second) of Torts § 255.
[76] *Id.*
[77] *Kent v. Cobb,* 35,663 (La. App. 2 Cir. 3/8/02), 811 So. 2d 1206, 1214; *see also Barrie,* 625 So.2d at 1016.
[78] *See, e.g., Josephs v. Austin,* 5-103 (La. App. 5 Cir. 10/12/82) 420 So.2d 1181 ; *Beal v. Lomas & Nettleton,* 12561 (La. App. 4 Cir. 2/9/82), 410 So.2d 318.

that will allow for the disbursal of account funds after death.[79] Likewise, a company owes its customer a duty of reasonable care to supply accurate information regarding a change in the customer's insurance policy.[80] In contrast, an employer does not owe a duty to its employee to supply accurate information regarding the manufacturer of a piece of equipment which injured the employee, especially since the employer was unaware the employee intended to use the information to file suit against the manufacturer.[81]

Plaintiffs make a conclusory allegation that "the defendants owed a duty to the Plaintiffs."[82] To support this threadbare assertion of an element of the cause of action for negligent or intentional misrepresentation, Plaintiffs allege the Defendants owed a duty to them because the Defendants solicited Plaintiffs as fans and solicited Plaintiffs to purchase tickets and other incidental items.[83] Even accepted as true, these allegations are insufficient to support the assertion that the Defendants owed the Plaintiffs a duty to supply accurate information. Plaintiffs do not allege the Defendants provided the alleged misinformation in the context of a contractual or fiduciary relationship with them. Plaintiffs do not allege the Defendants provided the alleged misinformation to a *limited* group of persons for whose benefit the Defendants supplied the information, nor do Plaintiffs allege the Defendants supplied the alleged misinformation in the context of a transaction in which the Defendants intended or expected the Plaintiffs to rely on the misinformation. Plaintiffs also do not allege the Defendants provided the alleged misinformation for the guidance of others in their business transactions.  Accepting the allegations contained in the complaint as true, Plaintiffs' allegations do not raise their

---

[79] *In re Succession of McKnight*, 33,802 (La. App. 2d Cir. 10/4/00), 768 So.2d 794, 797.
[80] *Beal*, 410 So. 2d at 321.
[81] *Barrie*, 625 So.2d at 1015-16.
[82] R. Doc. 1 at ¶ 65.
[83] *Id.*

right to relief above the speculative level; the allegations are insufficient to state a claim that is plausible on its face.

Because Plaintiffs fail to plead that Defendants owed a duty to supply correct information to Plaintiffs, Plaintiffs consequently cannot plead any breach thereof.[84] Further, it is not at all clear that Plaintiffs suffered damages or pecuniary loss as a result of any justifiable reliance on Defendants' alleged misrepresentations. To prove the fourth element of negligent misrepresentation, Plaintiffs must allege a "causal link between [Defendants'] purported omission [or affirmative misrepresentation] and [Plaintiffs'] financial ruin."[85] As to damages or pecuniary loss, Plaintiffs allege they paid the cost of the ticket to attend the game and other incidental items.[86] As to the misrepresentations, Plaintiffs allege that:

> [D]efendants promised that illegal helmet to helmet contact would not be permitted and fouls would be called to enforce same, that illegal contact will be more strictly enforced this season; that offensive and defensive pass interference will also be strictly enforced, they promised that the rules and the officiating would be consistent and fair to all competitors; that the integrity of the game is something they will always protect; that the rules apply to everybody; that it is GOODELL's job in particular, to make sure everyone from our players to our coach, to our fans and our partners that they all recognize the NFL games are going to be played by these sets of rules and that's part of The NFL's values and standards.[87]

However, Plaintiffs fail to plead a connection between their damages and Defendants' alleged misrepresentations. Plaintiffs do not make any factual allegations that they would not have paid for their tickets and incidental costs but for the alleged misrepresentations. Instead, Plaintiffs allege merely that "Plaintiffs purchased tickets and other incidental items as a result of these promises."[88] Such threadbare, conclusory statements fail to meet

---

[84] *VFS*, 2016 WL 3655908 at *3 (holding because "no duty existed [], therefore, no duty was breached").
[85] *Id.*
[86] R. Doc. 1 at ¶ 67.
[87] *Id.* at ¶ 65; *see also id.* at ¶¶ 11, 24, 25, 35-37.
[88] *Id.* at ¶ 68.

the basic *Twombly* pleading requirements.

Accordingly, Defendants' motion to dismiss Plaintiffs' claims for negligent misrepresentation is granted.

### III.   Count Three: Breach of Fiduciary Duty

In Count three, Plaintiffs allege Defendants NFL and Goodell owe a fiduciary duty to the fans of the NFL because Goodell is the "gatekeeper" for the integrity of the game.[89] Plaintiffs also allege Defendants Vinocich, Turner, Cavaletto, and Riveron are "obligated to perform their jobs so as to ensure that the fiduciary duty owed to the Plaintiffs is not breached."[90]

To state a claim for breach of fiduciary duty, a plaintiff first must allege facts to demonstrate a fiduciary relationship exists.[91] Under Louisiana law, a fiduciary relationship is "one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other . . . The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor."[92]

Plaintiffs fail to allege any special relationship of trust or confidence exists between them and the Defendants. Plaintiffs also fail to allege the Defendants undertook to act primarily for the Plaintiffs' benefit in a particular endeavor. Rather, Plaintiffs merely allege the fiduciary duty exists– a threadbare assertion supported by mere conclusory statements regarding their claim for breach of fiduciary duty. The motion to dismiss is

---

[89] *Id.* at ¶ 71.
[90] *Id.*
[91] *Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 647.
[92] *Id.* at 647 (internal citation and quotation marks omitted); *see also F.D.I.C. v. Caplan*, 874 F. Supp. 741, 744 (W.D. La. 1995).

granted with respect to Plaintiffs' claim for breach of fiduciary duty.

## IV.     Count Four: Unjust Enrichment

In Count four, Plaintiffs allege Defendants were unjustly enriched by the sale of over 73,000 tickets and any revenue collected from concessions, merchandise sales, advertising, and parking with respect to the January 20, 2019 NFC Championship Game.[93]

Pursuant to Louisiana Civil Code article 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." "The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided."[94] When a plaintiff alleges a delictual action or other cause of action, the plaintiff is precluded from seeking to recover under unjust enrichment.[95] Further, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[96]

Plaintiffs pleaded causes of action for detrimental reliance, negligent or intentional misrepresentation, and breach of fiduciary duties. Plaintiffs' ultimate success on those actions is immaterial to a determination of whether Plaintiffs have stated a claim for unjust enrichment. Because Plaintiffs have another remedy at law, they are precluded from bringing an action for unjust enrichment. Accordingly, the motion to dismiss Plaintiffs' claim for unjust enrichment is granted.

## V.     Count Five: Conspiracy and Solidary Liability

In Count five, Plaintiffs allege "Defendants did conspire to commit the actionable

---

[93] R. Doc. 1 at ¶ 78.
[94] *Walters v. MedSouth Record Mgmt., LLC*, 2010-0353 (La. 6/4/10), 38 So. 3d 243, 244 (quoting *Mouton v. State*, 87-0210 (La. App. 1 Cir. 1988) 525 So. 2d 1136, 1142).
[95] *Id.*
[96] *Id.*

causes of action included herein."[97] Under Louisiana law, "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."[98] "Louisiana does not recognize a distinct cause of action for civil conspiracy," but a person who conspires with another person to commit an intentional and willful act is answerable, in solido.[99] Accordingly, "[t]he actionable element of a civil conspiracy is the underlying intentional tort committed pursuant to an agreement between the wrongdoers."[100] Because the intentional misrepresentation cause of action in this case has been dismissed, the motion to dismiss Plaintiffs' claim for conspiracy is likewise granted.

## CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss[101] **is GRANTED**. Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 30th day of July, 2019.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[97] R. Doc. 1 at ¶ 81.

[98] La. Civ. Code Ann. art. 2324 (2008).

[99] *Currier v. Entergy Services, Inc.*, No. 11–2208, 2014 WL 4450360, at *2, n.4 (E.D. La. Sept. 10, 2014) (quoting La. Civ. Code Ann. art. 2324 (2008)); *see also Louisiana v. Guidry*, 489 F.3d 692, 707 ("Even after the revision of article 2324, Louisiana courts continue to recognize that its application is limited to conspiracies involving tortious conduct." (citations omitted)).

[100] *Currier*, 2014 WL 4450360 at *2, n.4  (citing *Able Sec. and Patrol, LLC v. State of Louisiana*, 569 F. Supp. 2d 617, 636 (E.D. La. 2008)).

[101] R. Doc. 18.